Fletta Irene HUME, Plaintiff in Error,

v.

STANDARD LIFE AND ACCIDENT IN-SURANCE COMPANY, an Oklahoma Corporation, Defendant in Error.

No. 39022.

Supreme Court of Oklahoma.

Oct. 3, 1961.

388

Richard E. Romang, Enid, for plaintiff in error.

John A. Johnson, of Savage, Gibson, Benefield & Shelton, Oklahoma City, for defendant in error.

HALLEY, Justice.

Fletta Irene Hume, widow of David S. Hume, brought this action to recover $5,-000 on an insurance contract of a policy issued to David S. Hume by Standard Life and Accident Insurance Company under a group policy. The insurance contract contained the following clause:

> "The Company will pay the indemnity provided in the Schedule of Indemnities to the Insured, if living, otherwise the accidental death benefits to Fletta Irene Hume, Wife as beneficiary, if the Insured has suffered directly and independently of all other causes, bodily injury effected solely through external, violent and accidental means resulting in any of the losses enumerated in the Schedule of Indemnities shown herein and provided that such loss has occurred within Ninety (90) Days from the date of the accident causing such loss."

Insurer paid the $5,000 for death resulting under the general terms of the policy but refused payment of the $5,000 double indemnity whereupon this action was commenced. The parties will be referred to as they appeared in the trial court. The insured will be referred to as such or designated as deceased.

The record discloses that on August 7, 1958, insured was driving a pickup truck on the highway near Covington, Oklahoma. He was accompanied by his son-in-law, Harland D. Stewart. His vehicle was struck by an automobile and he sustained some personal injuries. He went home and some complaint was made of his feeling bad and on August 9, 1958, he was hospitalized at Enid, Oklahoma, and remained in the hospital until August 13th thereafter. He died on September 19, 1958.

Dr. T testified that he first saw insured on August 9, 1958, and found indications of chest pain which he thought might be caused by a lung infection and ordered him placed in a hospital in Enid. He was sent home August 13th and he was not seen again until August 18, 1958. Thereafter insured

was not seen by the doctor during his lifetime. When he was hospitalized the examination disclosed a marked tenderness over the right lower chest. X-rays disclosed a fractured rib in the area of the right lower chest. It was felt that he also had a tenderness in the abdominal wall. The patient had a great deal of back pain. After his death an autopsy was performed and when asked what this autopsy revealed the doctor gave the following answer:

"The relevant finding was that the patient had an aneurysm of the abdominal aorta, which is the large blood vessel that carries blood to the lower part of the body. An aneurysm is a saccular dilatation of a large artery or of an artery and it is due to arteriosclerosis and medial sclerosis, which are degenerative changes in the wall. The aneurysm had ruptured and the patient had actually beld to death from the rupture of this large blood vessel. He had a massive hemorrhage and had died from bleeding to death from the rupture of the sac. This sac was about —it involved about five inches in length —10 centimeters, which is about 4½ or 5 inches, and it was about 2 inches across; 2 to 3 inches across—the aneurysm itself. Now it might be the bleeding had occurred in behind the abdomen in what we call the retroperitoneal space. The lining of the abdomen is the peritoneum and the aorta and that lines the free cavity of the abdomen in which the abdominal organs lie; the stomach and intestines and so on. Behind this cavity is the retroperitoneal space and it is covered over by the peritoneum. It is not actually a space. It is a potential space. It is filled with loose connective tissue and there isn't a free, open space like there is in the abdomen, like the abdominal cavity. He had bleeded out and dissected out through this retroperitoneal space a massive amount of blood."

He further testified that the aneurysm was there long prior to the accident of August 7, 1958; that in his opinion the accident may have torn the aneurysm causing a dissection but that the aneurysm was not caused by the accident; that the accident may have hastened the bursting of the aneurysm. He further stated the insured would not have died from the injury if he had not had an abnormal aneurysm.

At the conclusion of the evidence the trial court sustained a motion for directed verdict. The sole issue presented is the error in sustaining the motion for directed verdict.

This court has considered the same or similar clauses in contracts of insurance. In McCarty v. Occidental Life Ins. Co. of Cal., Okl., 268 P.2d 221, the insured died of cerebral aneurysm. In affirming a judgment for the insurer we discussed the rule announced in Metropolitan Life Ins. Co. v. Rosier, 189 Okl. 448, 117 P.2d 793, reversing the trial court for placing the burden on the insurer in an action for accidental death and stated [268 P.2d 226]:

"In reversing that judgment by reason of the trial court's error in requiring the insurer to assume the burden of proof, the difference in the perils insured against was considered. In that case we adopted the reasoning expressed in Dimmer v. Mutual Life Ins. Co., etc., 287 Mich. 168, 283 N.W. 16, wherein it is pointed out that a difference exists between an action to recover death benefits, and an action to recover upon an accident policy or a double indemnity provision of an ordinary life policy, in that in both latter instances it is incumbent upon the plaintiff to establish the fact of accidental death.

"Plaintiff's argument that because this is a different type of policy from that in the Rosier case, supra, satisfactorily distinguishes the matter and precludes application of the rule announced is not sound. In the present case the insurer contracted to pay in the event of accidental death. This being the condition of liability it was incumbent upon plaintiff to accept and dis-

charge the burden of establishing death by accidental means. * * *"

McCarty v. Occidental Life Ins. Co., supra, was cited with approval in Spangenburg v. Aetna Life Ins. Company, Okl., 306 P.2d 707, where this court affirmed the trial court in sustaining a demurrer to the evidence in an action where insured died of a heart attack.

Plaintiff points out that both of these cases contain clauses which limited the right of recovery where disease or physical or mental infirmity contributed to the death or injury. In discussing the legal effect of a clause similar to that in the case under consideration in Great Northern Life Ins. Co. of Milwaukee, Wis. v. Farmers' Union Co-Op Gin. Co., 181 Okl. 370, 73 P.2d 1155, 1157, it is stated:

" * * * But where, as in this case, the action is simply on an accident policy by the beneficiary, wherein the risk is limited to disabilities resulting solely from accidental means, directly and independently of all other causes, and excluding disabilities caused directly or indirectly, wholly or partly, from disease, the contract is the measure of the liability. Such a provision is binding. We so held in Federal Life Ins. Co. v. Firestone, 159 Okl. 228, 15 P.2d 141, in which the policy had the 'directly and independently of all other causes' provision, as in this case; * * *"

And further therein it is stated:

"The decision in the Firestone Case, supra, is in line with the general rule on this subject. That rule is stated in this manner by Cooley's Briefs on Insurance (2d Ed.) vol. 6, p. 5352: 'If the policy limits the liability to disability or death resulting solely from accidental injury "independently of all other causes", there can be no recovery for the death of insured resulting from the concurring effect of an injury and pre-existing disease.' See, also, the many decisions cited in Kerns v. Aetna Life Ins. Co. [8 Cir.] (C.C.A.) 291 F. 289; Aetna Life Ins. Co. v. Bethel,

140 Ky. 609, 131 S.W. 523; Ward v. Aetna Life Ins. Co., 82 Neb. 499, 118 N.W. 70; Hesse v. Travelers Ins. Co., 299 Pa. 125, 149 A. 96; Western Indemnity Co. v. MacKechnie (Tex. Civ.App.) 185 S.W. 615; Korff v. Travelers Ins. Co. [7 Cir.] (C.C.A.) 83 F.2d 45."

The rule to be applied is that even though the contract of insurance does not contain the exclusion clause as to disability or disease it is still the duty of the plaintiff to prove that the insured has suffered the injury directly and independently of all other causes solely through external, violent and accidental means. The evidence is uncontradicted that the insured would not have died from the accident if he had not had the aneurysm and that he died by reason of bursting of the aneurysm.

We have examined the cases of New York Life Ins. Co. v. Wise, 207 Okl. 622, 251 P.2d 1058, 35 A.L.R.2d 1099; Equitable Life Assur. Soc. of United States v. Neale et al., Okl., 258 P.2d 654; and New York Life Ins. Co. v. Kramer, Okl., 324 P.2d 270, relied on principally by plaintiff. In each of these cases there was competent evidence that the accident alone caused the injury or death. In Spangenburg v. Aetna Life Ins. Co., supra, it is stated [306 P.2d 708]:

"It is not error for the trial court to sustain a demurrer to plaintiff's evidence when the evidence is insufficient, as a matter of law, to justify a verdict and judgment in favor of the plaintiff."

There was no error in sustaining the motion for directed verdict.

Judgment affirmed.

BLACKBIRD, V. C. J., and WELCH, DAVISON and JOHNSON, JJ., concur.

JACKSON and IRWIN, JJ., concur in result.

WILLIAMS, C. J., dissents.